UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KELVIN BLATCH, et al.,

       Plaintiffs,

  -v-                                            No. 97 Civ. 3918 (LTS)(HBP)

TINO HERNANDEZ, et al.,

       Defendants.

--------------------------------------------------------x

## AMENDED[1] MEMORANDUM OPINION AND ORDER

       The above-captioned class action lawsuit was brought by mentally disabled tenants and occupants of New York City Housing Authority (the "Housing Authority") public housing who have been subject to eviction proceedings. Plaintiffs alleged that Defendants violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794, and the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604. Plaintiffs sought declaratory and injunctive relief. The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. Following many years of litigation, decision on cross-motions for summary judgment, and settlement negotiations, the parties have moved the Court for approval of a proposed class-action settlement. For the reasons stated below, the proposed settlement is approved.

---

[1] This Memorandum Opinion and Order has been amended to reflect the current Defendant.

BACKGROUND

The claims in this action arise from the Housing Authority's handling of tenants and occupants with mental disabilities, and of tenancy problems allegedly arising from such disabilities. Judge Chin certified the plaintiff class in this litigation pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure by order dated December 1, 1999. The class consists of "[p]resent, past and future tenants and/or occupants with mental disabilities who reside, resided or seek to reside in housing owned and operated by NYCHA and are, were or may be the subject of administrative grievances and/or tenancy termination proceedings and/or eviction proceedings in housing court or appeals from NYCHA's administrative determinations in State Supreme Court. In the case of past tenants and occupants with mental disabilities, they are members of the class only if the proceedings against them were pending at some point within the three-year period prior to the filing of this action." See Blatch v. Hernandez, 360 F. Supp. 2d 595, 601 (S.D.N.Y. 2005) (quoting Judge Chin's Order, Docket Entry No. 40).

Over the course of several years, the parties engaged in extensive discovery and briefed a variety of issues, including cross-motions for summary judgment. In the Court's March 30, 2005, Opinion and Order (the "2005 Opinion") addressing the parties' cross-motions for summary judgment, the Court granted injunctive and declaratory relief regarding a number of the claims asserted by Plaintiffs on behalf of the class, granted summary judgment in Defendants' favor dismissing other class claims, determined that further proceedings were necessary to resolve claims on behalf of the class members concerning outreach and procedures for reasonable accommodation of mental disabilities of class members, and resolved some of the claims for injunctions or declarations relating to individual class members, leaving the rest of those claims for further

proceedings. The Court also revoked class action status for some of the claims under the disability rights statute, and, finally, directed the parties to negotiate the terms of a permanent injunction implementing the Court's decisions granting Plaintiffs relief on their claims that certain aspects of the way in which the Housing Authority conducted administrative tenancy termination and Housing Court proceedings violated the due process rights of the mentally disabled tenants.

The Court directed the parties to meet with Magistrate Judge Pitman for negotiation of the permanent injunction orders authorized by the 2005 Opinion. In July 2008, the parties informed the Court that they had reached agreement on a proposed settlement of all the claims remaining in the action. Because some of those claims are asserted on behalf of the class, the Court issued an order pursuant to Federal Rule of Civil Procedure 23(e) approving the schedule for providing notice of the proposed settlement to the plaintiff class, setting a deadline for written objections and for the parties' responses, and setting the date for this hearing.

The Court received a number of submissions, which were forwarded to counsel for the parties, in response to the Notice of the Proposed Class Action Settlement (the "Notice"). The New York City Housing Authority Law Department submitted a September 15, 2008, request for approval of the settlement to the Court, which addressed the submissions that had been forwarded to counsel on or before September 15, 2008. The Legal Aid Society ("Legal Aid"), class counsel, submitted a request for approval dated September 16, 2008, faxed to the Court on September 17, 2008. On September 23, 2008, the Court held a fairness hearing on the proposed settlement. Many class members and persons believing that they might be class members, attended the September 23, 2008, hearing and took their opportunity to speak.[2] The Court has reviewed thoroughly the

---

[2] Although the Court cautioned speakers at the September 23, 2008, hearing, that the only issue before the Court at that time was the fairness of the <u>procedures</u> created by

proposed settlement, the submissions received in Chambers, and both the Housing Authority's and Legal Aid's responses, and has considered carefully all of the arguments made at the September 23, 2008, fairness hearing.

## DISCUSSION

### Legal Standard

Under Federal Rule of Civil Procedure 23(e), "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Where the "proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)( 2). The Court acts as the protector of the rights that will be bound by the res judicata effects of the settlement. In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 173 (S.D.N.Y. 2000). As such, it has " a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22-23 (2d Cir. 1987) (internal citations omitted). A court determines fairness by looking at both the substantive terms of the settlement and the negotiating process leading to the settlement. D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

### Negotiations Leading to the Proposed Settlement Agreement

---

the settlement, and that any comments should be limited as to whether the settlement, which creates new procedures for determining whether tenants are mentally incompetent, and for making sure that mentally incompetent tenants have appropriate representation when the Housing Authority is trying to terminate a tenancy or evict them, is fair and reasonable, the issues raised at the hearing related almost entirely to individual disputes with the Housing Authority. For many speakers the settlement did not implicate their issues at all.

In reviewing negotiations, the Court must ensure that the settlement is the result of arm's-length negotiations and that Plaintiffs' counsel possessed the necessary experience and ability, and engaged in the necessary discovery to effectively represent the interests of the class. D'Amato, 236 F.3d at 85. The Court's own records and the materials submitted in support of the settlement establish that the complaint in this action was first filed in 1997, more than ten years ago. Litigation of this action has been contentious, with the parties briefing a number of different issues, including a variety of discovery disputes. The parties engaged in extensive discovery and, as the 2005 Opinion indicates, submitted thousands of pages of evidentiary and argumentative submissions to the Court in connection with their summary judgment motions.

The Court issued a lengthy Opinion and Order addressing those motions. The Court granted summary judgment for Plaintiffs on their request for a declaration that the Housing Authority's practices and procedures for conducting administrative tenancy termination hearings and its practice of pursuing non-payment proceedings in Housing Court without informing that court that it had information indicating that the tenant was incapable of meaningfully participating in the proceedings violated the due process rights of mentally disabled tenants, and injunctive relief mandating the establishment and implementation of appropriately comprehensive and effective procedures. The Court directed the parties to work with each other and with Magistrate Judge Pitman to negotiate an appropriate proposed permanent injunction order and specifically identified areas the parties should address during their deliberations.[3]

---

[3] The specific areas of discussion identified in the Opinion included: any relevant changes in the Housing Authority's policies and practices since the briefing of the motions; an appropriate, uniform definition of mental disability for use in identifying competency issues; definitional language and training of relevant staff with respect to the identification of mentally disabled persons who may be incompetent to represent themselves or secure competent representation for themselves; notification to

After more than three years of negotiations supervised or facilitated by Judge Pitman, the parties reached the proposed settlement, which includes permanent injunctive relief requiring the appointment of guardians ad litem for mentally incompetent persons in connection with termination of tenancy and remaining family member grievance proceedings, as well as the communication of information relevant to mental status in connection with Housing Court proceedings against residential tenants. The settlement also requires that the Housing Authority follow certain specific procedures for investigating mental status and making determinations regarding mental incompetency, as well as additional procedures for complying with the permanent injunction, for four years after the settlement, and provides that the procedures cannot be changed during that time period with the consent of class counsel or court approval.

The Legal Aid submission indicates that the negotiations, conducted at arm's length, were complex and were vigorously contested at almost all stages of this process. The settlement submission itself indicates that the parties addressed the areas that the Court identified in the 2005 Opinion as necessary to the formulation of an appropriate permanent injunction. Because the proposed settlement has been reached relatively late in the course of litigation, after extensive

---

appropriate parties of the commencement of administrative termination proceedings; communication to the fact finder of all information in the Housing Authority's possession relating to competency, both in connection with live hearings and in connection with adjudications on default; appropriate standards for the consideration of applications to reopen default judgments where the applicant claims that the default was the result of a mental impairment (such standards should include consideration of information in the Housing Authority's possession relevant to the existence of such impairment and take due account of potential limitations arising from the disability on the applicant's ability to articulate extensively the reasons for the default); and mechanisms for bringing to the attention of the Housing Court any information in the Housing Authority's possession relating to the potential mental impairment and/or competency of class members against whom the Housing Authority initiates holdover and eviction proceedings. See Blatch v. Hernandez, 360 F. Supp. 2d 595, 622-23 (S.D.N.Y. 2005).

motion practice and a lengthy opinion addressing the merits of the case, class counsel was well informed of the relative strengths and weaknesses of the case.  See In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 173 ("The parties have less information on the relative strengths and weaknesses of claims when a settlement is arrived at early in the life of a case.")  The plaintiff class was represented by The Legal Aid Society, which has extensive experience in representing plaintiffs in class actions involving civil rights and the public interest.  Class counsel engaged in extensive discovery during the course of this litigation and prior to settlement, including both fact and expert discovery.  Thus, the Court finds that the proposed settlement was negotiated by able and informed advocates on both sides and is presumptively fair.  See In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 173-74. ("If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.")

The Substantive Terms of the Proposed Settlement Agreement

Although Rule 23(e) does not set forth specific factors that the Court must consider in determining whether the proposed settlement is fair, reasonable and adequate, courts in this circuit have traditionally considered nine factors, known as the Grinnell factors, in evaluating proposed settlements.  See D'Amato, 236 F.3d at 86; see also Cinelli v. MCS Claims Servs., 236 F.R.D. 118, 121 (E.D.N.Y. 2006) ("When reviewing the substantive terms of a class settlement, the district courts in this Circuit are directed to apply the 'Grinnell factors.'").  These factors, enumerated initially in the Second Circuit's opinion in City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000), are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Here, the final three factors are not relevant, as they are applicable only to actions for damages; the Court will consider the fifth factor in connection with the Plaintiffs' prospects of obtaining the non-monetary relief that had been sought on behalf of the class. See, e.g. Marisol A. v. Giuliani, 185 F.R.D. 152, 162 (S.D.N.Y. 1999), aff'd. sub nom. Joel A. v. Giuliani, 218 F.3d 132 (2d Cir. 2000).

The Settlement Terms

The settlement permanently bars the Housing Authority from proceeding with a termination of tenancy hearing or remaining family member grievance hearing with a resident who is incompetent unless the resident is represented by a guardian ad litem, which the Housing Authority will pay for. The settlement also permanently obligates the Housing Authority to advise the court in any proceeding against residential tenants in Housing Court of any information that the Housing Authority has indicating that the tenant may be incompetent.[4] The settlement includes a definition of an "incompetent" person as someone who, "as a result of mental disease or defect, the tenant or grievant is unable to (1) understand the nature of the proceedings or (2) adequately protect

---

[4] For Housing Court proceedings commenced prior to the effective date of the stipulation of settlement that are still pending or are restored to the calendar, the Housing Authority will advise the court of any information indicating the tenant's incompetence at the Housing Authority's next appearance or request for a warrant of eviction. (See Stip. of Settlement para. 7.)

and assert his/her rights and interests in the tenancy." (See Stip. of Settlement, para. 2.)  Attached to the settlement is a revised GM-3742 (the "Procedures"), setting out the procedures for assessing the mental competence of those who may be subject to a termination of tenancy hearing or a remaining family member grievance hearing, for appointing guardians ad litem in connection with such proceedings, and informing the housing Court that a tenant may be incompetent.  The settlement obligates the Housing Authority to train the relevant staff in the Procedures and their responsibilities thereunder.  Also, for the first four years from the date that the stipulation is approved by the Court, the Housing Authority may only amend the Procedures with the prior written consent of Plaintiffs' counsel or approval of the Court.  If the Housing Authority does not comply with the agreement, class members can bring certain types of challenges to decisions that went against them.  The settlement also permits the unresolved mental disability identification and reasonable accommodation claims asserted on behalf of the class to be withdrawn and brought at another time, but the action is otherwise discontinued with prejudice.  The settlement provides for monetary payment to one of the named Plaintiffs.  That Plaintiff, counsel represents, is the only one who suffered actual damages in connection with an eviction proceeding.

Application of Relevant Grinnell Factors

>*(1) The Complexity, Expense and Likely Duration of the Litigation*

A trial on the remaining issues in this case would have involved a complex set of factual and legal issues entailing considerable time and expense.  Further litigation would have likely entailed a class-wide examination of Housing Authority practices and possible additional discovery.  As the settlement permits Plaintiffs to pursue their remaining disability rights claims at another time if necessary, and allows them to avoid additional litigation and discovery costs now, this factor indicates that the settlement is fair to the class.

*(2) The Reaction of the Class to the Settlement*

The Court finds that reasonable notice of the proposed settlement, as required by Federal Rule of Civil Procedure 23(e)(1), which was outlined in the order pursuant to Rule 23(e), was provided to the class members. A copy of the Notice, which was sent to the class members, is attached to that order. This Notice was placed on the Housing Authority website and in the Housing Authority Journal and copies were sent to every Housing Authority tenant (whether or not known to be disabled) who had a termination of tenancy proceeding or remaining family member grievance currently pending. See Docket Entry No. 94.

The parties only received only a handful of written responses to the Notice, and only one of those commented on the fairness of the settlement. The writer indicated that he agreed "very much" with the settlement. Legal Aid also received 130 phone calls from people who received the Notice, and, according to Legal Aid's submission, none of those callers complained about the settlement. Instead, most of those calls requested that a guardian be appointed to represent a tenant or asked Legal Aid to consider an individual's case for representation.[5] Additionally, a number of people who had received the Notice attended the September 23, 2008, hearing and took their opportunity to speak. Their issues almost entirely related to individual disputes with the Housing Authority that were not relevant to the issues being addressed in connection with the application for approval of the settlement. These individuals were asked to provide their contact information to Legal Aid, and Legal Aid indicated that it would follow up on these issues. Two persons did raise issues with respect to a particular guardianship proceeding; the Court finds the settlement deals

---

[5] Legal Aid has informed the Court that it is considering those cases for representation and has asked the Housing Authority for more information.

with their concerns adequately.

The nature and the extremely low number of responses to the settlement that have been received weigh heavily in favor of the fairness of the settlement. See Ross v. A.H. Robins Co., Inc., 700 F. Supp. 682, 684 (S.D.N.Y. 1988) ("the absence of objectants may itself be taken as evidencing the fairness of the settlement") (citations omitted); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." quoting 4 NEWBERG § 11.41, at 108).

*(3) The Stage of the Proceedings and the Amount of Discovery Completed*

Discovery in this action has been completed, discovery disputes have been briefed and decided, the parties have cross-moved for summary judgment and the Court has ruled on the motions in a lengthy decision. As a result, most of the class claims were addressed and resolved at the summary judgment process and both sides had significant knowledge of and an appropriate basis for evaluating the strengths and weaknesses of their claim, including the precise terms of the injunctive relief addressing the due process issues on which Plaintiffs prevailed, as well as the unresolved class claims under the disability rights statutes. This factor weighs in favor of approving the proposed settlement.

*(4)/(5) The Risks of Establishing Liability and Remedies*

While the Court had ruled in Plaintiffs' favor with respect to the due process issues, the Court made the identification and implementation of changes in the Housing Authority's procedures and policies, subject, in the first instance, to wide ranging negotiation between the parties. Issues left unresolved by the Court's determination included the identification of the mental conditions that class members would have to display in order to be entitled to the due

process protections granted by the Court and precisely what the protections would be. As a result, there were risks that Plaintiffs would not achieve all that they viewed as necessary or appropriate in that negotiation process or in any judicial dispute resolution proceeding that might have been necessary if the parties failed to reach agreement. Plaintiffs also, of course, faced litigation risks in connection with the completely unresolved mental disability identification and reasonable accommodation issues. Defendants similarly faced risks in the negotiating process and from any potential litigation in connection with unresolved issues or those upon which the parties were unable to reach an agreement during negotiations. In light of these risks, the multifaceted settlement – a permanent injunction setting rights described in broad terms with a 4-year period for Plaintiffs to have input into specific methods of implementation, along with the opportunity to litigate the unresolved disability rights claims in the future – is a very reasonable result and weighs in favor of finding that the settlement is fair.

Furthermore, according to the September 15, 2008, submission of the Housing Authority, the key elements of this settlement have already been implemented and have proven effective. There is no evidence, nor has anyone responding to this settlement suggested, that an alternative remedy to those procedures outlined in the proposed settlement and attachments that would be more appropriate.

*(6) The Risks of Maintaining the Class Action Through the Trial*

This consideration is really not a factor in this case, as the Court has already adjusted the scope of class treatment in the 2005 Opinion.

Attorneys' Fees

Under the stipulation, the Housing Authority will pay attorneys' fees to Plaintiffs' counsel in an amount to be determined by the parties, or, if no resolution is reached by the parties,

by the Court. In light of the fact that this settlement does not involve a settlement fund from which attorneys' fees are being allocated and includes the condition that if the parties cannot agree the Court will determine the appropriate amount, the Court finds this aspect of the settlement to be reasonable.

## CONCLUSION

After careful review and consideration of the submissions and statements on the record and in light of the negotiation leading to and the substantive terms of the settlement, the Court finds that the settlement is fair, reasonable and adequate. The settlement provides the class with very substantial and significant relief with respect to the core due process claims, including permanent injunctive relief and a role in the monitoring and implementation of new procedures over the next four years. The settlement also provides Plaintiffs with the opportunity to litigate the unresolved claims under the disability statutes. Thus, the Court APPROVES the Stipulation of Settlement insofar as it resolves the class claims.

Dated: New York, New York
November 3, 2008

LAURA TAYLOR SWAIN
United States District Judge